UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                              :
DEBRA K. WHITE,                               :     CASE NO. 1:17-CV-2613
                                              :
        Plaintiff,                            :
                                              :
vs.                                           :     OPINION & ORDER
                                              :     [Resolving Doc. 1]
COMMISSIONER OF SOCIAL SECURITY,              :
                                              :
        Defendant.                            :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff Debra White seeks judicial review of the Social Security Commissioner's denial of her application for disability insurance benefits and supplemental security income.[1] Magistrate Judge Kathleen Burke recommends affirming the Commissioner's denial of benefits.[2] Plaintiff raises two objections.[3]

For the following reasons, the Court **OVERRULES** Plaintiff's first objection and **SUSTAINS** Plaintiff's second objection. The Court therefore **ADOPTS** the Magistrate Judge's Report and Recommendation ("R&R") with respect to the first objection but **REJECTS** the R&R with respect to the second objection. The Court **VACATES** the Administrative Law Judge's ("ALJ's") decision and **REMANDS** the case to the ALJ for further proceedings.

I. Background

In April and May 2014, Plaintiff applied for disability insurance benefits and supplemental security income. She alleged that she was disabled as of February 28, 2014.[4]

---

[1] Doc. 1.
[2] Doc. 20.
[3] Doc. 21.
[4] Doc. 10 at 15. All citations to the administrative record refer to the ECF page number in the document.

Case No. 1:17-cv-2613
Gwin, J.

She claimed that she suffered from hyperthyroidism (Grave's disease), mediastinal mass, tachycardia, weight loss, hypertension, anxiety, "elevated LFT's," and microcytic anemia.[5] After denials by the state agency,[6] White requested a hearing.[7] On May 25, 2016, ALJ Susan Guiffre conducted a hearing.[8]

In an August 17, 2016 decision, the ALJ ruled that Plaintiff was not disabled because she could perform her past work as a physical therapy assistant and children institution attendant.[9] The appeals council denied review on September 11, 2017, rendering the ALJ's conclusion the Commissioner's final decision.[10]

On December 15, 2017, White brought the present action seeking review of Commissioner's decision.[11] On October 16, 2018, the Magistrate Judge issued an R&R recommending affirmance.[12] Plaintiff objects.[13]

## II. Legal Standard

The Federal Magistrates Act requires the Court to review the objected-to portions of the R&R *de novo*.[14] The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[15]

The Court reviews whether the ALJ's decision is "supported by substantial evidence and made pursuant to proper legal standards."[16] Substantial evidence is "such relevant

---

[5] *Id.* at 400.
[6] *Id.* at 256, 257.
[7] *Id.* at 310.
[8] *Id.* at 205.
[9] *Id.* at 20.
[10] *Id.* at 1.
[11] Doc. 1.
[12] Doc. 20.
[13] Doc. 21.
[14] 28 U.S.C. § 636(b)(1).
[15] *Id.*
[16] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Case No. 1:17-cv-2613
Gwin, J.

evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Substantial evidence is more than a scintilla of evidence, but less than a preponderance.[18]

To establish disability under the Social Security Act, a plaintiff must demonstrate that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[19]

### III. Discussion

### A. The ALJ's Decision

The Social Security Administration's regulations outline a five-step process to determine whether a claimant is disabled:

> [T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.[20]

Here, at step one the ALJ determined that Plaintiff had not engaged in gainful activity since February 28, 2014.[21] At step two, she determined that Plaintiff had two severe impairments— Grave's disease and obesity[22]—and two non-severe impairments—hypertension and affective

---

[17] *Richardson v. Perales*, 402 U.S. 289, 401 (1971).
[18] *Id.*
[19] 42 U.S.C. § 423(d)(1)(A).
[20] *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017).
[21] Doc. 10 at 25.
[22] *Id.* at 25.

-3-

disorder.[23] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or was medically equal to the severity of the regulations listed impairments.[24]

After step three, the ALJ determined Plaintiff's residual functional capacity—that is, her ability to perform mental and physical activities despite limitations imposed by her impairments.[25] Under the regulations, the ALJ conducted a two-step process. First, the ALJ considered whether Plaintiff had an underlying medical impairment that could produce Plaintiff's claimed pain and symptoms. The ALJ concluded that there was.[26] Second, the ALJ considered whether the Plaintiff's statements about the "intensity, persistence, and functionally limiting effects" of her impairment were substantiated by objective medical evidence. Here, the ALJ concluded that they were not.[27]

For this reason, the ALJ concluded that Plaintiff White had residual functional capacity for "medium" work as defined in the regulations,[28] except she could frequently crawl, occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds.[29]

---

[23] *Id.* at 26. The ALJ explained that Plaintiff's mental impairment "causes no more than 'mild' limitation," to the four functional areas listed in section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). Plaintiff does not seem to challenge this conclusion.
[24] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.
[25] Doc. 10 at 29.
[26] *Id.* at 30.
[27] *Id.*
[28] *See* 20 C.F.R. §§ 414.1567(c), 416.967(c).
[29] Doc. 10 at 29. The ALJ also explained that Plaintiff should avoid exposure to hazards such as industrial machinery, unprotected heights, and similar things.

Case No. 1:17-cv-2613
Gwin, J.

Thus, at step four the ALJ concluded that Plaintiff could perform her past work as a physical therapy assistant and a child institution attendant.[30] Because she could perform this work, the ALJ concluded that Plaintiff was not disabled.[31]

### B. Plaintiff's Objections

Like her submissions to the Magistrate Judge,[32] Plaintiff's *pro se* objection is difficult to parse.[33] She seems to raise two issues: First, she claims that the physical requirements of her previous physical therapist work are more demanding than the ALJ concluded. Second, she claims that the ALJ only addressed four medical conditions, even though the record showed other medical problems.

i. The Court Overrules Plaintiff's First Objection

In her first objection, Plaintiff states that "I showed proof that the work of a physical therapist requires more work than was stated."[34] In support of this argument, she includes several physical therapist job descriptions.[35]

This objection is not persuasive, because the regulations permit the ALJ to rely upon vocational expert testimony to determine whether Plaintiff could perform her past relevant work.[36] At the hearing, the ALJ asked a vocational expert a hypothetical question whether a person with Plaintiff's age, education, past work experience, and Plaintiff's assessed

---

[30] *Id.* at 34.
[31] *Id.*
[32] Before the Magistrate Judge, Plaintiff submitted 328 pages of medical records interspersed with 32 handwritten pages of argument in a "motion for extension of time." *See* Doc. 12. Judge Burke construed the thirty-two handwritten pages as Plaintiff's brief on the merits. Doc. 13.
[33] Plaintiff's seventy-two-page objection is a mix of handwritten notes, web pages, medical records, and handwritten summaries of medical records.
[34] Doc. 21 at 3.
[35] Doc. 21-2.
[36] *See Giffteth v. Comm'r of Social Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)).

Case No. 1:17-cv-2613
Gwin, J.

residual functional capacity could perform her past work as a physical therapy assistant.[37]
The expert gave the opinion that White could. Unless the ALJ's hypothetical was inconsistent with the ALJ's residual functional capacity assessment—which Plaintiff does not argue here—the vocational expert's testimony is substantial evidence supporting the ALJ's conclusion.[38]

    ii.    <u>The Court Sustains Plaintiff's Second Objection</u>

Plaintiff's second objection states that "[t]he judge chose to only acknowledge 4 of my medical conditions although the medical reports show a different picture."[39] Construed liberally,[40] Plaintiff argues the ALJ did not consider all of the record evidence when evaluating whether the medical evidence supported Plaintiff's testimony about the intensity, persistence, and functionally limiting effects of her conditions.[41]

Agency regulations[42] direct ALJs to "consider *all* of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be

---

[37] Doc. 10 at 228.
[38] *Griffeth*, 217 F. App'x at 429 (explaining that while the hypothetical question "must incorporate all of the claimant's physical and mental limitations," the ALJ "is not required to accept a claimant's subjective complaints" and may present the hypothetical "on the basis of his own assessment").
[39] Doc. 21 at 3.
[40] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed." (internal quotation marks omitted)).
[41] The Magistrate Judge, when considering this argument in the R&R, only considered whether the ALJ addressed the impairments Plaintiff listed in her reply brief. Doc. 17 at 2-6. However, Plaintiff's (admittedly voluminous) submission below also presented evidence regarding Plaintiff's spine issues (Doc. 12-2 at 27-8), liver disease (Doc. 12-2 at 3), and nerve pain (Doc. 12-2 at 23).
[42] *See* 20 C.F.R. § 404.1545 ("We will assess your residual functional capacity based on *all* the relevant medical and other evidence.").

expected to produce those symptoms."[43] Given this duty to address all relevant record evidence, the ALJ's decision is deficient in two respects.

First, the ALJ's opinion did not address Plaintiff's degenerative spine disease. The administrative record included an October 28, 2014 office treatment record from the Cleveland Clinic Hospital. The office notes x-ray image analysis stated that Plaintiff suffered from "degenerative disc disease of the lower [cervical spine]" and "degenerative disc disease and facet arthritis of the lower lumbar spine degenerative spondylolisthesis of the L4 [spinal segment]."[44] At the same clinic visit Plaintiff described shooting pains and numbness in her hands and feet.[45]

Discussing this record in the decision, the ALJ stated that "[o]n October 28, 2014, the claimant denied chest pain, headache, changes in vision, leg swelling, palpitations, nausea, vomiting, joint pain, muscle pain, syncope, tremors, or cold or heat intolerance."[46] This is true enough, but it is hardly right to say that the ALJ "considered" Plaintiff's degenerative spine diagnosis by enumerating all the unrelated symptoms Plaintiff denied at the visit.

Second, the ALJs' opinion summarily discounted Plaintiff's claims that she was experiencing side effects from her medication. Social Security Regulations require the ALJ

---

[43] SSR 16-3p, *Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304 at *1 (S.S.A. Oct. 25, 2017) (emphasis added). Although this particular version of the ruling was not in effect at the time of Plaintiff's hearing, it republished identical language in a previous version of SSR 16-3p, which was effective March 28, 2016. *See also* SSR 96-8p, *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 at *5 (July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record." (emphasis in original)).
[44] Doc. 10 at 701. This document is on the list of exhibits appended to the ALJ's decision. *Id.* at 40.
[45] *Id.*
[46] *Id.* at 31.

to consider medication side effects when assessing the severity and persistence of a claimant's symptoms[47] and when assessing the claimant's residual functional capacity.[48]

At the hearing, Plaintiff testified that she was dizzy "all the time" because of the medication she took to manage her Grave's disease.[49] She also testified that she reduced and stopped taking her medication, and her pain and dizziness had abated as a result.[50]

Discussing these claims in her decision, the ALJ remarked that "although the claimant alleged extreme side effects from her thyroid medication, this is not documented in the medical record, as there is no documentation of the claimant complaining to her providers of side effects. The record just shows when she reported decreasing her medication[.]"[51]

This conclusion is not supported by substantial evidence, as the objective medical evidence in the record documents that Plaintiff suffered unexplained dizziness and nerve pain after she began taking her thyroid medication. On August 12, 2015,[52] Plaintiff was hospitalized at Marymount Hospital after passing out in the shower and striking her head. On August 25, 2015, Plaintiff visited Metrohealth Doctor Ikram Khan for a neurological consult.[53] At the tilt table test, Plaintiff described "head ache, right eye symptoms, shortness of breath, numbness and tingling in left arm and hand."[54] After various negative

---

[47] SSR 16-3p at *8 (stating that the ALJ will consider "[t]he type, dosage, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms").
[48] SSR 96-8p at *5 (stating that the RFC must consider "[t]he effects of treatment, including . . . side effects of medication").
[49] Doc. 10 at 218.
[50] *Id.* at 222-23.
[51] *Id.* at 32.
[52] Plaintiff began taking metoprolol for her thyroid disease in April 2014. See Doc. 10 at 576.
[53] *Id.* at 906. This record is on the list of exhibits appended to the ALJ's decision. *Id.* at 40.
[54] *Id.* at 917.

neurological tests, Dr. Kahn stated that "[f]rom the description looks like vasovagal vs medication related" but also recommended that her doctor "consider changing her medication."[55]

The ALJ's decision does not discuss Plaintiff's August 12, 2015 hospitalization. It simply states that "[o]n August 12 claimant denied chest pain, shortness of breath, chills, nausea, eye pain, vomiting, or numbness or weakness in the face, arms or legs . . . her heart had regular rate and rhythm . . . [h]er eyes were normal to inspection. She had no acute focal neurological deficits."[56] While this is a thorough inventory of the unrelated symptoms Plaintiff denied that day, it does not demonstrate that the ALJ considered the objective medical evidence suggesting that Plaintiff had inexplicably passed out in the shower and hit her head that day.

Simply put, dizziness is a known side effect of Plaintiff's thyroid medication and the record evidence supports—not contradicts—Plaintiff's testimony that she suffered potentially disabling dizziness due to her medication.[57]

To be clear, the Court is not taking issue with the ALJ's weighing of the evidence. If the ALJ had considered Plaintiff's spine diagnoses and side effects and concluded that they were not disabling, the Court would not disturb that conclusion. Here, the ALJ failed to weigh the relevant evidence at all.

---

[55] *Id.* at 951.
[56] *Id.* at 31.
[57] *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) (holding that there was not substantial evidence for ALJ to discount claimant's testimony regarding side effects where claimant's medications were "known to have powerful side effects such as drowsiness, fatigue, light-headedness and weakness"); *Dalpra v. Sec'y of Health & Human Servs.*, 802 F.2d 456 (6th Cir. 1986) (vacating and remanding decision to the Secretary where the ALJ had failed to consider whether medication side-effects limited claimant's residual functional capacity).

## IV. Conclusion

For these reasons, the Court **OVERRULES** Plaintiff's first objection and **SUSTAINS** Plaintiff's second objection. The Court therefore **ADOPTS** the Magistrate Judge's R&R with respect to the first objection but **REJECTS** the R&R with respect to the second objection. The Court **VACATES** the ALJ's decision and **REMANDS** the case to the ALJ for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: March 25, 2019         *s/     James S. Gwin*
                              JAMES S. GWIN
                              UNITED STATES DISTRICT JUDGE